## HERBERT RICHARDSON v. THE STATE.

### No. 3542.   Decided May 12, 1915.

**1.—Murder—Newly Discovered Evidence—Statement of Facts.**

In the absence of a statement of facts this court can not tell whether the alleged newly discovered evidence was simply cumulative or not, or whether the same would have produced different results, and it must presume that the trial court correctly overruled the motion for new trial.

**2.—Same—Misconduct of Jury—Evidence De Hors the Record.**

Where the defendant complained that the jury received other testimony than that adduced on the witness stand, and the court heard testimony thereon and found adversely to the defendant, and it also appeared in the record that the alleged remarks in the jury room could not have influenced the jury in finding their verdict, there was no reversible error.

Appeal from the District Court of Grayson.   Tried below before the Hon. M. H. Garnett.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The opinion states. the case.

*Freeman & Batsell,* for appellant.—On question of misconduct of jury in considering testimony not in the record: Lucas v. State, 27 Texas Crim. App., 322; Hogan v. State, 28 S. W. Rep., 949; Ysaguirre v. State, 58 S. W. Rep., 1005; Wiley v. State, 81 S. W. Rep., 711; Booker v. State, 54 Texas Crim. Rep., 80, 111 S. W. Rep., 744; Mason v. State, 16 S. W. Rep., 766.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at four years confinement in the penitentiary.

No statement of facts accompanies the record, and the only questions presented for review relate to the question of whether or not the court erred in not granting a new trial on account of alleged newly discovered testimony, and the allegation that the jury received other testimony during the trial than that adduced on the witness stand.   Mr. L. C. Chapman testified that since the trial of the case in a conversation with L. J. Harden he heard Mr. Harden state he heard Abraham Richardson (the deceased) threaten to kill Herbert Richardson (the defendant). The record discloses that this threat had never been communicated to defendant, and it would only be admissible on the issue of who began the difficulty, if that was an issue in the case.   In the absence of a

statement of facts it is impossible for us to determine whether or not such testimony was material. We cannot tell whether or not it is but cumulative on this issue, or have any idea of whether or not such a threat if proven would have any tendency towards producing a different result. . If we had the evidence before us adduced on the trial we could intelligently pass on the matter, but without it we can not. The trial court heard the evidence on the trial, and when this ground of the motion was presented to him, we must presume that he held it was but cumulative of other testimony; that the issue of who began the difficulty was not in the case, or that some other rule of law preventing him from granting a new trial on that ground.

On the issue of whether or not the jury received other testimony than that adduced on the witness stand, Mr. Loy Helvie, one of the jurors, testified that F. B. Kidd, the deputy sheriff in charge of the jury, had said during the trial of the case. Ralph Richards (a witness for defendant) and Herbert Richardson, the defendant, were half brothers, but also swears, "I paid no particular attention to it, because it was proven on the witness stand they were not related."

J. B. Green testified he never heard Mr. Kidd say anything about Richards and Richardson being related, but that he heard Mr. Kidd say "the Richardson set is a tough set."

C. A. Allen testified that he did not hear Mr. Kidd say anything about the Richardsons being a tough set, but that Mr. Kidd made a remark about Ralph Richards and Herbert Richardson being connected.

If this was all the testimony heard by the court we would be inclined to hold that the deputy sheriff had made improper remarks in the presence and hearing of the jury; but the State introduced other jurymen, and Deputy Sheriff Kidd testifies, "I will swear that I did not make any statement that the Richardsons were a tough set. There was something said about Herbert Richardson having some half brothers, and I think I replied that I understood he had some half brothers. I did not say that Ralph Richards was Herbert Richardson's half brother."

J. W. Miller testified that Mr. Kidd was the officer in charge of the jury, and that Kidd at no time said the Richardsons were a tough set or that Richards was a half brother of appellant.

Another juryman, G. W. Ruddle, says that he never heard anything about Richards and appellant being half brothers, nor that the Richardsons were a tough set.

J. D. Coe, B. H. Estep, J. H. Tettleton, Mr. Gregg and J. E. Burkett, all members of the jury, swear that the deputy sheriff made no such remarks.

Thus the court had before him one juryman who testified that Mr. Kidd had said the Richardsons were a tough set, and nine of the jury who testified that Mr. Kidd made no such remark. In addition to this, Mr. Kidd swears positively he did not do so.

The court also had before him two jurymen who testified that Mr. Kidd said that Ralph Richards and Herbert Richardson were half-brothers, or related. Mr. Kidd says he made no such remark, and

eight jurymen swear that no such remark was made. In addition to this, the juryman who says that he heard Mr. Kidd make the remark also testifies, "I paid no attention to the remark, because it was proven on the witness stand they were not related." If the eight jurymen and Mr. Kidd were mistaken, and the two jurymen right, and he had inadvertently made such a statement, and it was subsequently proven on the witness stand they were not related, certainly such remark could not and would not have influenced the jury. There was no error in the court overruling the motion.

The judgment is affirmed.

*Affirmed.*